UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GARY JOSEPH DANIEL,

          Plaintiff,          Case No. 1:13-cv-169

v.                                Honorable Robert Holmes Bell

DEBORAH GUNN et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. The Court denied Plaintiff's motion to proceed *in forma pauperis*, and Plaintiff has since paid the civil action filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Gary Joseph Daniel presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF), though the actions about which he complains occurred while he was housed at the West Shoreline Correctional Facility (MTF) and the Earnest C. Brooks Correctional Facility (LRF). Plaintiff sues LRF Residential Unit Manager and Acting Assistant Deputy Warden Deborah Gunn, MTF Classification Director (unknown) Mack, and MTF Sergeant J.K. Smith.

According to the complaint, Plaintiff is a longstanding, chronic-care patient within the MDOC. He alleges that he has

> a bevy of serious medical health care problems, including, but not limited to, acute abdominal and chest pains, c[h]olelithiasis, diarrhea, dizziness, dyspepsia, edema, increased fatigue, headaches, heartburn, malaise, nausea, pancre[a]titis, disaphoresis, foot ulcer, frequent serious infections, hematuria, hypoglycemic episodes, palpitations, nocturi[a], polydipsia, polyuris, severe shortness of breath and sore throat/hoarseness, slow healing of wounds/sores, foot ulcers, transient weakness and vomiting, chronic cough, serious nocturnal symptoms, recurrent pneumonitis, experiencing extreme and chronic spasms in left arm extending to lower extremities resulting in unnecessary pain and suffering, left femur fracture, broken left arm, and cervical spine disc and lumbar disc injuries, chronic pain in lumbar and kidney area, does not have feeling of pressure or tough to genitalia area, severe night sweats, weight loss, and hypertension, blurred vision, frequent thirst.

(Compl. ¶ 13, docket #1, Page ID#5.) According to Plaintiff, during the years of his incarceration, he has "passionately engaged in a campaign of filing non-frivolous grievances" challenging his medical treatment. (*Id.* ¶ 14, Page ID#6.) Plaintiff also alleges that, at all times prior to November 7, 2011, he has been a model prisoner and has been classified to custody security management level I. *See* MICH. DEP'T OF CORR., Policy Directives 05.01.130 ¶ B and 05.01.140 ¶ A (collectively

describing the five levels of prisoner security classification as Level I, Secure Level I, Level II, Level IV, Level V, and Administrative Segregation, with administrative segregation being the most secure).

On the night of November 7, 2011, as Plaintiff was returning from the evening medication distribution, he was assaulted by two prisoners who used a lock in a sock to batter him. Plaintiff suffered lacerations and bruising on the right side of his face. At 9:00 p.m., he was given immediate medical care. Plaintiff alleges that, over the next 24 hours, Defendants Gunn, Smith and Mack acted to single Plaintiff out and retaliate against him for filing medical grievances. At 9:50 p.m., Defendant Smith directed that Plaintiff be placed in the administrative segregation unit, pending investigation of the assault. On November 7 or 8, 2011, Defendant Gunn approved Plaintiff's reclassification to Level II, ostensibly because Plaintiff's "behavior indicates that prisoner is not suitable for Level I at this time." (Compl. ¶ 22, Page ID#8; Ex. G to Compl., Page ID#124.) The following day, November 8, 2011, Plaintiff was transferred to LRF, where he stayed for an unknown period. By the time Plaintiff filed his complaint, he was again classified at Level I and was housed at STF.

Plaintiff alleges that Defendants retaliated against him, in violation of the First Amendment, when they placed him in administrative segregation on November 7. He also contends that Defendants retaliated against him by increasing his security classification level and transferring him on November 8, 2011. In addition, Plaintiff claims that Defendants conspired to deprive him of his constitutional rights, in violation of 42 U.S.C. § 1985. Further, Plaintiff contends that, even if Defendants and unknown others were not part of the conspiracy, they were aware of and neglected to prevent the conspiracy, in violation of 42 U.S.C. § 1986. Moreover, Plaintiff contends that Defendant Gunn and unnamed others engaged in a malicious abuse of process to change Plaintiff's

security level. Finally, Plaintiff alleges that Defendants or unknown others failed to train or properly supervise corrections officers in their application of MDOC policies affecting inmate custody security classifications.

For relief, Plaintiff seeks compensatory and punitive damages, together with unspecified declaratory and injunctive relief.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

v. *Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Retaliation

Plaintiff first alleges that Defendants retaliated against him for filing medical grievances by changing his security level from Level I to Level II. He also alleges that, for the same reason, Defendants transferred him to LRF for some period of time.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Plaintiff consequently has adequately alleged the first part of the retaliation test.

With respect to the second part of the retaliation standard, Plaintiff has not clearly alleged adverse action with respect to his transfer. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). To the extent he complains about his transfer, Plaintiff states no facts that would support a conclusion that the transfer was objectively adverse. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, also, Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted); *Thaddeus-X*, 175 F.3d at 398. If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high

paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-cv-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill,* 630 F.3d at 468.

Plaintiff was transferred from a facility where he was housed at Level I to a Level II facility. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of the transfer. Indeed, Plaintiff makes no allegations about the conditions at LRF at all. As a consequence, Plaintiff's transfer does not rise to the level of adverse action. *Siggers-El*, 412 F.3d at 701; *Yarro*w, 78 F. App'x. at 543.

With respect to the change in his security classification, however, the Sixth Circuit has, in an unpublished opinion, indicated that a change in custody security level may, in some circumstances, be sufficiently adverse to state a retaliation claim. *See King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005). The Court therefore will assume without deciding that the change in Plaintiff's classification level was sufficiently adverse to support a claim of retaliation.

Nevertheless, Plaintiff fails entirely to allege facts that would support an inference that Defendant Gunn's security classification review was causally connected to the filing of Plaintiff's grievances. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive

'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action. Plaintiff alleges only that, on unspecified prior occasions, he filed numerous grievances against various medical providers. Plaintiff attaches to his complaint copies of the medical grievances and requests for medical care (kites) that he filed on the following dates: February 7, 2012, December 22, 2011, December 13, 2011, December 19, 2011, March 17, 2011, February 13, 2011, February 11, 2011 (kite), January 10, 2011 (kite), December 29, 2010, December 28, 2010 (kite), December 25, 2010 (kite), December 20, 2010 (kite), December 16, 2010 (kite), December 15, 2010 (kite), December 13, 2010, December 3, 2010 (kite), November 15, 2010 (kite),November 4, 2010 (kite), October 27, 2010 (kite), October 21, 2010 (kite), October 20, 2010, October 7, 2010 (kite), October 4, 2010 (kite), and September 2, 2010. (*See* Ex. D to Compl., Page ID##37, 40, 46, 52, 57, 71, 75, 83, 87-92, 97, 103-07, 115.) While temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory

motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " *Id*. at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

As is apparent from the dates listed, most grievances and kites filed by Plaintiff were filed more than a year before the date on which he was reclassified or filed after he was reclassified. The closest date on which he filed a grievance prior to his reclassification was March 17, 2011, nearly eight months before the allegedly retaliatory act. In addition, none of Plaintiff's grievances or kites named any Defendant in this action. Further, because medical grievances are reviewed only by medical personnel, not custody personnel, s*ee* MICH. DEP'T OF CORR., Policy Directive 3.02.130 ¶¶ X, DD(2), GG; 03.04.100(LL), none of the Defendants even reviewed his many grievances. In sum, Plaintiff has not alleged any facts to support his conclusion that Defendant custody officials retaliated against him because he filed prior grievances against unnamed medical providers. Accordingly, his speculative and conclusory allegations of retaliation fail to state a claim.

### B. Due Process

Plaintiff complains that Defendants engaged in a malicious abuse of process when they changed his security level in violation of Michigan Department of Corrections policy. Reading the complaint generously, as this Court must, *see Haines*, 404 U.S. at 520, the allegations arguably present both a procedural due process claim and a claim under state law.

Plaintiff's procedural due process claim is without merit. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated, because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of

security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Plaintiff's brief placement in administrative segregation followed by assignment to Level II involves nothing more than a change to his security classification. Because plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

Plaintiff also fails to state a § 1983 claim based on the allegation that Defendants violated MDOC policy. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Finally, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

### C. Conspiracy

Plaintiff alleges that Defendants conspired under 42 U.S.C. §§ 1983 and 1985. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Similarly, to state a claim for conspiracy under § 1985, a plaintiff must allege facts showing that (1) two or more persons conspired, (2) for the purpose of depriving the plaintiff of the equal protection of the laws, and (3) that the conspirators committed an overt act (4) that injured the plaintiff. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The § 1985 plaintiff also must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Radvansky*, 395 F.3d at 314; *Johnson*, 40 F.3d at 839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). Under both § 1983 and § 1985, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient to state a claim. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith*

*v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).

Plaintiff's conspiracy claims against Defendants require little discussion. Plaintiff fails to make any factual allegations sufficient to support a conspiracy claim under either 42 U.S.C. §§ 1983 or 1985. *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Maki v. Laakko*, 88 F.3d 361, 367 (6th Cir. 1996), *cert. denied*, 1996 WL 723535 (1997). It is well established that vague and conclusory allegations of conspiracy unsupported by material facts are insufficient to state a claim. *See Gutierrez*, 826 F.2d at 1538; *see also Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. March 28, 1994). As the Court previously discussed, Plaintiff has failed to allege any constitutional violation, or attempt to violate the constitution. In addition, Plaintiff has alleged no particularized facts linking these Defendants with one another. For both reasons, he fails to state a claim under either provision. Further, Plaintiff clearly has not alleged the existence of a class-based animus sufficient to support a § 1985 claim.

Moreover, given the fact that Plaintiff has failed to allege a conspiracy claim under § 1985, he necessarily fails to allege a claim under § 1986, which provides, in relevant part, as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

*Id.* In the absence of allegations sufficient to support the existence of a conspiracy under § 1985, Plaintiff cannot maintain an action under § 1986. *Id.*; *Brookhart v. Rohr*, 385 F. App'x 67, 70 (3d Cir. 2010) (citing *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994)); *Feinberg v. Campbell*, No. 10-13974, 2011 WL 5143474, at *4 (E.D. Mich. Sept. 12, 2011).

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: October 9, 2013                     /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE